UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT L. WOLFE,                            Civil Action No. 15-13854


      Plaintiff,                       HON. ARTHUR J. TARNOW
                                       U.S. District Judge
v.                                          HON. R.  STEVEN WHALEN
                                       U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert L. Wolfe ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #20] be GRANTED, remanding the case for an award of benefits under § 405(g) and that Defendant's Motion for Summary Judgment [Dock. #24] be DENIED.

-1-

## PROCEDURAL HISTORY

On March 26, 2012, Plaintiff filed applications for DIB and SSI, alleging disability as of January 23, 2012 (Tr. 132-133, 134-139).   After the initial denial of the claim, he requested an administrative hearing, held on October 11, 2013 in Detroit, Michigan before Administrative Law Judge ("ALJ") Oksana Xenos (Tr. 33).  Plaintiff, represented by attorney Terry Berlin, testified (Tr. 37-51), as did Vocational Expert ("VE") Diane Regan (Tr. 52-55). On November 7, 2013, ALJ Xenos found that Plaintiff was capable of performing his past relevant work and thus, was not disabled (Tr. 27-28).  On July 29, 2015, the Appeals Council denied review (Tr. 4-8).  Plaintiff filed for judicial review of the Commissioner's decision on November 2, 2015.

## BACKGROUND FACTS

Plaintiff, born September 5, 1951, was 62 when the ALJ issued her decision (Tr. 28, 132).  He completed four years of college and worked previously as a security guard, security monitor, substitute teacher, and word processor (Tr. 158-159).  He alleges disability as a result of Chronic Obstructive Pulmonary Disease ("COPD"), asthma, hypertension, deep vein thrombosis ("DVT"), hypothyroidism, renal failure, obesity, Graves disease, and aspiration pneumonia (Tr. 157).

### A.    Plaintiff's Testimony

 Plaintiff offered the following testimony:

  He was left-handed, stood 6', and weighed 262 pounds (Tr. 37).  He completed a

Master's degree in Divinity in May, 1976 (Tr. 37). Before that, he received a Bachelor's degree in Political Science from the University of Michigan in May, 1973 (Tr. 37-38). He was currently living with his sister, who gave him medication, prepared meals, and administered therapy consistent with his doctor's orders (Tr. 38). He characterized his current condition as a "rehabilitation situation" following a hospitalization for COPD in February, 2012 (Tr. 38). The COPD exacerbation leading to the hospitalization caused a lack of oxygen to the brain resulting in temporary memory problems (Tr. 38). He had last worked in January, 2012 (Tr. 40). Prior to the February, 2012 hospitalization, he had been denied employment as an ordained minister because of asthma (Tr. 40).

Plaintiff quit smoking in 2012 and used alcohol sparingly (Tr. 41). He had a current driver's license but due to physical problems, relied on family members for transportation (Tr. 41). He went to church when his physical condition permitted and performed volunteer work as a staff minister, adding that he ended up directing others rather than performing the work himself (Tr. 42). He grocery shopped once a week but due to his inability to stand for extended periods, relied on his sister to prepare meals (Tr. 42). He took a bus occasionally (Tr. 42). He read the Bible; theology and "social ethic" books; and detective books (Tr. 43).

Plaintiff was unable to walk for more than 30 yards before becoming winded (Tr. 43). He required position changes every 20 minutes due to DVT and took Coumadin for one year following the February, 2012 hospitalization (Tr. 43). He was unable to stand for more than eight minutes at a stretch (Tr. 44). He used a CPAP machine for sleep apnea (Tr. 44). His

blood pressure readings had been as high as 191 over 141 and he currently took medication for the condition (Tr. 46).

In response to questioning by his attorney, Plaintiff testified that the medication prescribed for COPD raised his blood pressure (Tr. 47). He took eight medications daily and experienced the side effects of dizziness, drowsiness, and balance and short-term memory problems (Tr. 47). His inability to maintain a normal sleep cycle caused fatigue (Tr. 48). He also experienced "constant" chest pain (Tr. 48-49). He was terminated from his job as a security guard in January, 2012 because of asthma (Tr. 49). He had been hospitalized for DVT twice (Tr. 50). He testified that if he were able to work, he would chose a job in customer service or teaching (Tr. 50). He opined that he would be unable to perform even sedentary, unskilled work due to breathing and memory problems and the leg condition (Tr. 51).

### B.   Medical Evidence

#### 1.  Treating Sources

In January, 2012, Plaintiff, admitted to the hospital for three days for shortness of breath after walking "a few steps" (Tr. 199). His initial blood pressure reading was 237 over 130 (Tr. 204). He was diagnosed with asthma, Graves disease, COPD, and "likely" congestive heart failure (Tr. 199, 207). Treating staff observed edema of the lower extremities (Tr. 209).

The following month, Plaintiff was re-admitted for 14 days of inpatient care and incubated with acute sepsis and acute respiratory failure due to COPD and asthma (Tr. 215-229, 416, 423, 426).   He was also diagnosed with hypothyroidism, aspiration pneumonia, decreased renal function,  and acute DVT (Tr. 220, 263, 281, 283, 337).  He was prescribed Coumadin (Tr. 416).  Imaging studies showed the partial collapse of both lungs (Tr. 231).  He was discharged to home therapy with "24 hr supervision" and given a "rolling heeled walker" (Tr. 220).  He was prescribed a blood thinner (Tr. 220).  He demonstrated reduced cognitive functioning (Tr. 234, 236).  Physical therapy consisting of gait training and balance was recommended (Tr. 230).  Hospital notes state that Plaintiff's sister and brother-in-law could stay with him for a few days after discharge (Tr. 231).

In April, 2012, Plaintiff was readmitted due to an exacerbation of COPD (Tr. 352).  Imaging studies showed the partial collapse of both lungs (Tr. 350-351, 360, 365).  He was again intubated (Tr. 365).  He was discharged in stable condition (Tr. 353, 355).   Treating notes from the same month show that Plaintiff's blood pressure was 165 over 87 (Tr. 366).

In May, 2012, Felix Valbuena Jr., M.D. found that Plaintiff was limited to less than 10 pounds lifting on an occasional basis and was precluded from all reaching, pushing, pulling, and standing for even two hours in an eight-hour workday (Tr. 399).  Dr. Valbuena found no mental limitations (Tr. 400).  The same month, Plaintiff was advised to use a CPAP device for sleep apnea (Tr. 401).   In July, 2012, Dr. Valbuena found that Plaintiff required "complete freedom" to rest without restriction (Tr. 431).  Dr. Valbuena found further that

"oxygen requirements" and leg pain prevented Plaintiff from lifting more than five pounds on an occasional basis (Tr. 432). He found that COPD, leg pain, and balance problems prevented Plaintiff from all postural activities (Tr. 432-434).

July, 2013 records note ongoing treatment for sleep apnea (Tr. 403-406). September, 2013 treating records note the ongoing conditions of asthma, embolism, thrombosis, and hypertension (Tr. 435). The same month, Dr. Valbuena completed a second assessment, finding that Plaintiff continued to experience disabling exertional and postural limitations consistent with the July, 2012 assessment (Tr. 427-430, 431-434).

## 2.  Non-Treating Sources

In June, 2012 Atul C. Shah, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of fatigue, dizziness, lightheadedness, joint aches, blood clots in both legs and the inability to walk more than one block (Tr. 375). Dr. Shah found that Plaintiff was limited to walking, standing, and sitting for four to six hours a day "with frequent rests secondary to his COPD" (Tr. 377). He found that Plaintiff's functional abilities were compromised by fatigue and limitations in lung capacity (Tr. 380, 384).

Later the same month, Milagros Flores, M.D. found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday (Tr. 63). He found that Plaintiff could climb stairs on a frequent basis and balance, stoop, kneel, crouch, crawl, and climb ropes, ladders, or scaffolds on an occasional basis (Tr. 63). He found that Plaintiff should avoid concentrated exposure to temperature extremes, wetness,

-6-

and humidity (Tr. 63-64).

### 3.  Material Submitted After the November 7, 2013 Administrative Decision[1]

March and April, 2012 post-hospitalization records note the ongoing conditions of asthma, DVT, and hypertension (Tr. 451, 453, 459).   April, 2012 records note shortness of breath while walking (Tr. 451).  The following month and in June, 2012, Plaintiff received additional treatment for DVT (Tr. 436, 440, 531).  September, 2012 treating records state that Plaintiff was "doing well" (Tr. 521).   April, 2013 treating records note the ongoing conditions of COPD, asthma, hypertension, and sleep apnea (Tr. 517).  September, 2013 records state that Plaintiff experienced shortness of breath around 20 times a week (Tr. (Tr. 512).  September and October, 2013 records note a diagnosis of severe obstructive sleep apnea as of June, 2013 (Tr. 491, 495).  In December, 2013, Plaintiff reported excessive daytime sleepiness due to sleep apnea (Tr. 485).  April, 2014 records state that Plaintiff lived with his sister (Tr. 467).

---

[1]

When the Appeals Council denies a claimant's request for a review of an application based on new material (Tr. 1-8), the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan*, 2 F.3d 692, 696–696 (6th Cir. 1993). Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." As such, this Court may consider the newer evidence only for purpose of determining whether remand is appropriate under the sixth sentence of § 405(g).  Because a remand for benefits is recommended under the fourth sentence of § 405(g), the Court need not decide whether a remand for consideration of the newer evidence is warranted under sentence six.

### C. Vocational Expert Testimony

VE Regan classified Plaintiff's past relevant work as a security guard as semiskilled and exertionally light[2] and work as a typist, semiskilled/sedentary (Tr. 194).  The ALJ posed the following question to VE Regan,  describing a hypothetical individual of Plaintiff's age, education and work experience:

> [C]an perform work at the light exertional level; cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps; balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to temperature extremes, wetness, excess humidity, as well as fumes, odors, and noxious gases; should also avoid hazards such as moving machinery and unprotected heights; and cannot operate foot or leg controls.  Can an individual with that residual functional capacity and given profile perform any of the claimant's past work?

The VE replied that the above limitations would not preclude Plaintiff's past relevant work as a typist (Tr. 52).  The VE testified that an additional limitation to frequent (as opposed to *constant*) handling and reaching, or, the need for an assistive device for walking more than 20 yards would not change the job finding  (Tr. 52-53).

The VE testified that if the individual were off task up to 20 percent of the workday

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

due to pain and other impairments, or, was unable to sit, stand, or walk for a total of eight

hours a day five days a week, all competitive employment would be eliminated (Tr. 53-54).

The VE stated that her testimony was consistent with the information found in the *Dictionary

of Occupational Titles* ("*DOT*") (Tr. 54).  In response to questioning by Plaintiff's attorney,

the VE stated that the need to miss more than one to two days of work each month would be

work preclusive (Tr. 54).

### D.  The ALJ's Decision

Citing  the medical records, ALJ Xenos found that Plaintiff experienced the "severe"

impairments of "[COPD]; asthma; obesity; history of [DVT]; hypertension; thyroid disorder;

[and] sleep apnea" but that none of the conditions met or medically equaled an impairment

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22-23).  The ALJ found that Plaintiff

had the Residual Functional Capacity ("RFC") for sedentary work with the following

additional limitations:

> [T]he claimant cannot climb ladders, ropes, or scaffolds; can only occasionally
> climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; can
> frequently reach and handle; and cannot operate foot/leg controls.  The
> claimant should avoid concentrated exposure to temperature extremes,
> wetness, excess humidity, fumes, odors, and noxious gases; and he should
> avoid hazards, such as moving machinery and unprotected heights.  The
> claimant needs to be able to elevate his legs to hip level during regularly
> scheduled breaks and lunch periods The claimant requires an assistive device
> for ambulating distances greater than 20 yards (Tr. 23).

Citing the VE's testimony, the ALJ determined that Plaintiff could perform his past relevant

work as a typist (Tr. 23, 52).

The ALJ discounted Plaintiff's professed degree of limitation (Tr. 24). She noted that although Plaintiff had received aggressive treatment for a variety of conditions, the treatment had "been generally effective in controlling those symptoms" (Tr. 26). She cited April, 2012 hospital discharge papers stated that Plaintiff's condition was stable, noting that Plaintiff had not since required emergency treatment (Tr. 25). The ALJ accorded only "limited weight" to Dr. Valbuena's July, 2012 and September, 2013 opinion that Plaintiff require freedom to rest frequently on the basis that "the record [did] not reflect treatment for associated leg pain" (Tr. 26). She found that there was "no objective evidence that the C-PAP machine" was "unsuccessful in treating [the] sleep apnea" (Tr. 26).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account

whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-11-

## ANALYSIS

### A.  The ALJ's Analysis of the Medical Opinions

In his first argument, Plaintiff takes issue with the ALJ's partial rejection of Dr. Valbuena's opinion. *Plaintiff's Brief,* 16-23, *Docket #20,* Pg ID 617.  He contends that the ALJ's rationales for discounting Dr. Valbuena's treating opinion and Dr. Shah's consultative opinion are procedurally and substantively inadequate, and that the ALJ erred by according more weight to Dr. Flores' non-examining assessment. *Id.*  Plaintiff argues in effect, that the RFC for sedentary work is not supported by Dr. Flores' findings (light work) or Drs. Vabuena and Shah's findings (incapable of even sedentary work).

"[I]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c)(2)).  However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)).  In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the

-12-

"supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

Plaintiff is correct that the failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson v. CSS,* 378 F.3d 541, 544–546 (6th Cir.2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

## 1.  Dr. Valbuena's Treating Opinions

The ALJ, acknowledging that Dr. Valbuena was a treating source, provided the following rationale for according his May, 2012 and September, 2013 opinions "limited weight:"

> Dr. Valbuena's disabling opinions that the claimant is unable to sit/stand/walk for a total of 8 hours a day due to leg pain . . . are without substantial support from the other evidence of record.  Although the claimant has been prescribed Coumadin for DVT, the record does not reflect treatment for associated leg pain (Tr. 26).

The ALJ's rejection of Dr. Valbuena's opinions is not well explained or supported.

-13-

First, the ALJ inaccurately stated that Dr. Valbuena found that Plaintiff was disabled by only leg pain, while in fact, the treating physician found that Plaintiff was unable to perform even sedentary work due to leg pain *along with* COPD ("oxygen requirements"), and dizziness (432-434). The ALJ's failure, by itself, to address Dr. Valbuena's finding that Plaintiff was unable to perform even sedentary work due in part to the conditions of COPD and dizziness warrants a remand.

Second, the ALJ did not elaborate on her finding that Dr. Valbuena's findings "are without substantial support." Contrary to the ALJ's truncated and vague finding, the treating records before her show that Plaintiff experienced the ongoing conditions of sleep apnea, asthma, embolism, thrombosis, and hypertension following his second hospitalization in April, 2012[3] (Tr. 403, 406, 435).

The ALJ's rationale for the rejection of Dr. Valbuena's findings contains additional erroneous findings. The ALJ discredited Dr. Valbuena's finding of "leg pain" resulting from DVT on the basis Plaintiff did not take medication for "leg pain" (Tr. 26). However, leg pain, a recognized symptom of DVD, is treated with blood thinners rather than pain

---

[3]
The records submitted after the ALJ's November 7, 2013 decision, showing shortness of breath while walking (Tr. 451); additional treatment for DVT (Tr. 436, 440, 531); "severe" sleep apnea (Tr. 491, 495); and shortness of breath 20 times a week (Tr. 517) also stand at odds with the ALJ's finding that Dr. Valbuena's opinions were not supported by the record.

-14-

medication as would be appropriate in the case of musculoskeletal pain.[4]   Notably, the ALJ

acknowledged in the same sentence that Plaintiff was prescribed Coumadin, a blood thinner,

for the condition (Tr. 26).  The fact that Plaintiff took blood thinners (but not pain medication)

for the condition does not discredit his claim of leg pain.

        For the above reasons, the ALJ's treating physician analysis does not satisfy the "good

reasons" requirement of § 404.1527.

        **2. Dr. Shah's Consultative Opinion**

        While Dr. Shah's consultative findings comports with the treating physician opinion,

the ALJ accorded only "limited weight" to Dr. Shah's consultative opinion that Plaintiff was

limited to walking, standing, or sitting for four to six hours a day and required "frequent rests

secondary to . . . COPD" (Tr. 25, 377).  The ALJ noted that Plaintiff experienced "'slight'"

shortness of breath while touching his toes but had adequate bilateral grip, intact fine

dexterity, and no lower extremity edema (Tr. 25).  She discounted Dr. Shah's conclusions on

the basis that they were based on Plaintiff's "subjective complaints" (Tr. 25).

        While Dr. Shah's conclusions are not entitled to the deference accorded a treating

source opinion, opinions by consultative sources examining claimants on a one-time basis are

generally entitled to greater weight than  non-examining opinions.  § 404.1527(c)(1-2).  To

be sure, the ALJ was not required to adopt the consultative findings.  However, her purported

---

        [4]http://www.mayoclinic.org/diseases-conditions/deep-vein-thrombosis/basics/symp
toms/con-20031922.  (Last visited December 12, 2016).

reasons for rejecting the findings did not address the basis of Dr. Shah's conclusions.   For

example, the ALJ's observation that Plaintiff experienced intact fine dexterity and good grip

strength does not undermine Dr. Shah's finding that Plaintiff experienced disability level

limitations resulting from COPD.  The ALJ's finding that Dr. Shah's conclusions were based

only on Plaintiff's subjective complaints is contradicted by a pulmonary function test

performed along with the consultative examination (Tr. 382-385).  Although the ALJ was not

required to provide a full-blown analysis of Dr. Shah's opinion, her rejection was based on

a combination of irrelevant findings and misstatements of the record.

        The ALJ's apparent reliance on Dr. Flores' non-examining conclusions over Dr.

Valbuena's treating opinions and Dr. Shah's consultative one is not *per se* improper.  *See* SSR

96–6p, 1996 WL 374180, *3. (July 2, 1996)("In appropriate circumstances," the opinion of

non-examining source "may be entitled to greater weight than the opinions of treating or

examining sources"); § 404.1527(e)(2)(I); *See also Brooks v. Comm'r of Soc. Sec.,* 531

Fed.Appx. 636, 642 (6th Cir. August 6, 2013)(same). But based on this record. the ALJ's

reliance on Dr. Flores was error.

        In contrast to the treating and consultative finding that Plaintiff's limitations precluded
all full-time work, Dr. Flores found that Plaintiff could perform exertionally light work.  The
ALJ's statement that she gave "appropriate" weight to Dr. Flores' opinion does not include
her reasons for rejecting the finding that Plaintiff could perform light work (in favor of an
RFC for sedentary work), other than to  make the circular finding that Plaintiff was "more
limited than opined by the State agency consultant" (Tr. 25).  In fact, the ALJ's finding that
Plaintiff could perform even sedentary work is unsupported by any medical opinion and the
ALJ has failed to provide an explanation for the "compromise" position that Plaintiff could
perform sedentary work.  Because the ALJ's discussion of the opinion evidence does not

adequately explain the basis for this finding, reversal is required.[5]

## B. The Credibility Determination

For overlapping reasons, Plaintiff's argument that the credibility determination was not adequately supported provides grounds for remand. Notwithstanding the deference accorded an ALJ's assessment of the claimant's credibility, *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997), the credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, *4 (July 2, 1996).[6] A credibility determination unsupported by the record constitutes grounds for remand. *Gholston v. Commissioner of Social Sec.*, 2009 WL 440956, *12–13 (E.D.Mich. February 23, 2009).

_____

[5]The ALJ's partial reliance on the non-examining findings is of particular concern, given Dr. Flores' wholly unsupportable finding that Plaintiff (60, obese, and experiencing severe COPD and DVT) could perform work requiring the *climbing ropes* up to one-third of the workday (Tr. 63).

[6]

In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." *See* 20 C.F.R. § 404.1529(c)(3), fn 7, below. Nonetheless, SSR 96-7p applies to the present determination, decided on November 7, 2013. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006)(accord 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

The ALJ's rationale for the credibility determination is poorly supported by the record. While she accurately stated that Plaintiff did not take pain medication for leg pain caused by DVT, as discussed above, the records show that he complied with the recommended treatment of blood thinners for the condition. The ALJ's observation that Plaintiff had not been hospitalized for either COPD or DVT since the prolonged February, 2012 and April, 2012 hospitalizations does not establish that he was capable of full-time work (Tr. 26). The fact that Plaintiff was able to sit upright and walk for limited periods does not defeat his disability claim. "[A] claimant need not be bedridden to qualify for disability benefits." *Hutsell v. Massanari,* 259 F.3d 707, 713 (8th Cir. 2001). Moreover, the treating records show that Plaintiff continued to take a plethora of medication for various conditions, a number of which cause the side effect of dizziness. Plaintiff's allegations of chronic dizziness are well supported by these records. Because the credibility determination, like the analysis of the medical evidence, is not well supported or explained, a remand on these grounds is also appropriate.

The above-discussed errors compel a remand. The transcript in this case shows not only a strong case for disability, but an overwhelming case. Without more, the RFC limiting Plaintiff to elevating his leg for only five minutes each hour stands at odds with his need to change position every 20 minutes due to DVT (Tr. 23, 43, 54-55). The ALJ's Step Four finding that this 65-year-old man with well-established respiratory and vascular impairments could engage in competitive employment is based on the mischaracterization of a record

-18-

strongly supporting a finding of disability.  Therefore, the case must be remanded for an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir. 1994).

## **CONCLUSION**

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #20] be GRANTED, remanding the case for an award of benefits under § 405(g) and that Defendant's Motion for Summary Judgment [Dock. #24] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

-19-

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: December 15, 2016

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on December 15, 2016, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager